IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LASANDRA HURST, | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| v. | ) 00-AR-3099-J |
| ALABAMA QUALITY, LLC d.b.a. BURGER KING, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of defendant, Alabama Quality, LLC d.b.a. Burger King ("Burger King"), against plaintiff, LaSandra Hurst ("Hurst"). Hurst filed this Title VII action against Burger King after she was fired upon returning to work from a doctor's appointment.

The parties agree that Burger King hired Hurst as a cashier on December 4, 1998 and promoted her to assistant manager on March 28, 1999. Otherwise, the parties differ on what happened during Hurst's employment at the Fayette Burger King. Because this court is considering a motion for summary judgment, it will resolve all disputes of fact in favor of Hurst. Having so resolved the disputes, the court recites the following narrative, but first notes that many of the facts are disputed by Burger King.

Hurst was a good employee. Her supervisors never complained about her before the incident that led to her termination. Hurst



was the only black assistant manager at the Fayette Burger King and believed that she was assigned to supervise and work with lazy employees more often than the white assistant managers. Hurst never complained about being assigned to supervise and work with lazy employees. Hurst was criticized whenever inventory or cash was missing, and when there were too many occurrences of something called a "Void"[1]. Hurst complained to the store's general manager, Chris Clark ("Clark"), that these criticisms were pointed at her because she is black. Other assistant managers were criticized for these same reasons. Indeed, one assistant manager, Tracie Guthrie ("Guthrie"), who is white, was fired for stealing money from Burger King.

Hurst asked Clark if she could transfer, as an assistant manager, to the Burger King in Winfield, which is closer to Hurst's home than Fayette. Clark told Hurst he had spoken to Robin Thompson, ("Thompson"), the district manager, about Hurst's transfer request, and that Thompson rejected the request. Hurst asked the manager of the Winfield store about transferring, and this manager told Hurst to speak to Thompson directly. Hurst, who never spoke to Thompson directly about the transfer, believes that she was not allowed to transfer because Burger King has a policy of never staffing a store with more than one black

---

[1] This court guesses that by the term void, Hurst refers to completed transactions that had to be voided by a manager.

assistant manager, especially a store like Winfield where most of the customers are white. When Hurst told Clark her theory, he angrily denied it. After Hurst was fired, a white assistant manger, Tasha Brimer ("Brimer"), worked at both locations.

On November 18, 1999, Hurst, upon arriving at work to begin her 10:00 a.m. shift, called Clark at home to complain the she was ill and to ask if she could go to the doctor instead of work. Clark refused. When Hurst later learned that Clark had earlier that morning allowed Guthrie to go to the hospital to seek treatment for a corn, she accused Clark of only allowing white assistant managers to leave work for medical treatment. Clark angrily denied having such a policy. The next day Hurst called in sick and Clark called her at home to demand that she come to work. When he arrived at work, Kevin Patrick ("Patrick"), Hurst's co-assistant manager called Clark at home, to back-up Hurst's request, whereupon Clark relented and allowed Hurst to go to the hospital, from which she received an excuse to stay away from work for the rest of the day.

Hurst was scheduled to be off from work on December 2 and 3. These dates are significant because Hurst needed a treatment that had to coincide with the start of her menstrual cycle,[2] which she expected to begin on those dates. Without consulting Hurst;

---

[2] What treatment Hurst said she needed varied depending on whom she told. It was either treatment for an ovarian cyst, a fertility treatment, or, as she told Patrick, some un-defined "female problems."

3

Guthrie and Patrick rearranged the schedule, changing Hurst's days off and upsetting her plan.  After Thompson intervened, Guthrie and Patrick again rearranged the schedule to give Hurst her days off.  Hurst started to menstruate earlier than expected.  She called her doctor on November 28, 1999 and accepted the next appointment available; 11:00 a.m. on November 30, a day she was scheduled to work from 5:00 a.m. until 3:00 p.m.  Hurst obtained permission from Clark to keep this appointment, with the understanding that Guthrie would cover Hurst's shift.  On the day of the appointment, Thompson visited the store to eat breakfast and check up on the operation.  Hurst told Thompson of her impending appointment, and Thompson told her that she was not allowed to leave the store during the lunch rush, the busiest time of day.  Thompson told Hurst that Hurst would be "written up" if she left for the appointment.  Hurst left for the appointment anyway, and Thompson fired Hurst.  The actual notice of termination was delivered to Hurst by Clark, because Thompson had to leave for a previously scheduled appointment before Hurst returned.  The decision, though, was made by Thompson, because Clark did not hold the power of termination over assistant managers.

**Analysis**

In this Title VII action, Hurst alleges racial

discrimination and retaliation. Ordinarily, when a plaintiff makes such an allegation, she points to some act of discrimination and some subsequent act of retaliation. In the instant case, Hurst claims that there was one wrong, her unjustified termination, which was the result of both racial animus and retaliation for earlier complaints about this racial animus.

In order to survive summary judgment, Hurst must first present enough evidence to allow a reasonable finder of fact to conclude that she has met the elements of a *prima facie* case of discrimination.

> In order to make out a prima facie case of discriminatory discharge, a plaintiff must prove (1) that he is a member of a protected minority, (2) that he was qualified for the job from which he was discharged, (3) that he was discharged, and (4) that his former position was filled by a non-minority.

*Jones v. Lumberjack Meats, Inc.*, 680 F. 2d 98,101 (11th Cir. 1982). There is no dispute that Hurst has satisfied her burden in relation to the first three elements. (1) Hurst is black; (2) defendant concedes, for the purposes of its summary judgment motion, that Hurst is qualified for her job; (Br. in Supp. of Def. Mot. fir Summ. J. at 11-12); (3) Hurst was discharged; (4) the race of Hurst's replacement, though, is contested by the parties. Hurst maintains that Brimer, who is white, replaced her. Burger King argues that Burger King eliminated Hurst's

5

position, and therefore no one replaced Hurst. Burger King points out that it did not elevate another employee to full-time assistant manager in Fayette until Kym Sparks, who is black, was promoted to replace Guthrie, who is white, after Guthrie was fired for stealing.

Both parties agree that Brimer trained to be an assistant manager not long after Hurst was fired. Furthermore, both parties agree that unlike Hurst, Brimer split her time between the Fayette and Winfield stores. Thompson testified that she created the new position of assistant manager that floats between Fayette and Winfield after she fired Hurst because sales at the Fayette store did not justify replacing Hurst with one full assistant manager, that a part-time assistant manager was more appropriate. (Thompson depo. at 44). Furthermore, Burger King points out that after Brimer transferred to the Russelville store, Eric Willingham, a black man, replaced her and continued to float between the two stores, continuing the dual nature of the position created by Thompson upon the firing of Hurst. A new assistant manager was not assigned full-time to the Fayette store until after Guthrie was fired. Whether Hurst has made a *prima facie* case depends, then, on whether the floating assistant manager position was the same job from which Hurst had been fired. Whether the floating position was the same job is a question of fact, and one for which there is evidence to allow a

reasonable finder of fact to find either way.  As such, Hurst has met her burden of proof for element number four and has established, for summary judgment purposes, a *prima facie* case of discrimination.

   Once Hurst establishes a *prima facie* case of discrimination, Burger King can still prevail on the motion for summary judgment by articulating a legitimate, non-discriminatory reason for firing Hurst.  Burger King has done this by saying that it fired Hurst for insubordination, not on account of race.  Specifically, Burger King argues that even if Clark gave permission for Hurst to leave, something Clark and Burger King deny, that Thompson directly ordered Hurst to remain at the store during lunch, and that Hurst disobeyed this direct order and, instead, visited her doctor.  There is no dispute that Hurst disobeyed on this occasion immediately prior to her discharge.

   "Once a legitimate, nondiscriminatory reason for dismissal is put forward by the employer, the burden returns to the plaintiff to prove by significantly probative evidence that the proffered reason is a pretext for discrimination." *Carter v. City of Miami*, 870 F. 2d 578,584 (11th Cir. 1989).  To show that this explanation is pretextual, Hurst argues that when confronted with a situation exactly like hers, an assistant manager that wanted to go to the doctor during lunch, that differed only in that the complaining assistant manager was white, Burger King

7

allowed the assistant manager to go to the doctor. Hurst's attempted linkage fails due to the many factual dissimilarities between the two incidents. It is undisputed that Guthrie arrived at work afflicted with a corn on her foot that caused her great pain and that her very presence at work was in violation of her doctor's instruction to not go to work and to stay off of her feet. While Hurst's doctor's visit was no doubt important to Hurst, Hurst has put forth no evidence that her situation was an emergency. Furthermore, Clark ordered Guthrie to leave and go to the hospital, whereas in Hurst's situation, a manager specifically ordered her not to leave for the doctor. Finally, there is no evidence that Guthrie left during the all important lunch period in a fast food restaurant. Hurst has failed to meet her burden that Burger King's proferred legitimate, non-discriminatory reason is pre-textual.

Undaunted, Hurst argues that certain "other evidence" could lead a trier of fact to conclude that racial animus was the motivating factor behind the firing of Hurst. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 14). The court will evaluate each of the five items listed by Hurst. The first is Hurst's assertion that she was not allowed to transfer to Winfield while Brimer, a white assistant manager, was allowed to float between the two stores, ergo racism. The problem with Hurst's argument is that after Brimer left the floating position

and transferred to another store, she was replaced by Willingham, who is black.  If Burger King wanted to keep black assistant managers out of the Winfield store, or out of the floater slot, it surely would not have placed Willingham there.

Hurst's second reason is the Guthrie foot corn incident, the lack of racist intent in which was pointed out above.

The third incident is the reorganization of the schedule that deprived Hurst of her chosen days off.  As Hurst admits, this reorganization was initiated by Patrick and Guthrie, who are Hurst's peers, not her superiors.  Furthermore, at the direction of Thompson, Hurst's superior, Guthrie's and Patrick again rearranged the schedule to return to Hurst her days off. Finally, there is no evidence that Guthrie and Patrick's actions were in any way motivated by racism.

The fourth alleged sign of racism is that Burger King "constantly singled out" Hurst for questioning when money or inventory was short.  The undisputed evidence is that all managers were asked about shortages (including Guthrie who was not only questioned but fired after her theft caused one money shortage) and that Hurst was never disciplined for any shortage.

Finally, Hurst claims that she was assigned the lazy employees.  It is undisputed, though, that employees generally worked fixed shifts and assistant managers rotated, so all

managers worked with all employees.

To the extent that Hurst argues that these five "incidents," singly or in the aggregate, are themselves actionable under Title VII, this court disagrees and concludes to the contrary that none of these incidents are serious enough to merit relief under Title VII as adverse employment actions.

Though Hurst has made a *prima facie* case for discrimination, she has been unable to rebut Burger King's legitimate, non-discriminatory reason for firing her. Burger King's motion for summary judgment will be granted by separate order.

DONE this 30th day of April, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE